**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **STEVEN DALE SHANKLIN, DORIS GAY** | § | |
| **LUBER, and on behalf of D.M.S., and on** | § | |
| **behalf of S.D.S** | § | |
| | § | |
| **V.** | § | **A-11-CA-699-LY** |
| | § | |
| **ELLEN CHAMBLIN, ANNA ARMIJO,** | § | |
| **S. MA'AT, SHAWN MIKESKA,** | § | |
| **ROBERT KOSCO, and CLAUDE MAYE** | § | |

**INTERIM REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Interim Report and Recommendation to the District Court

pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United

States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to

United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiffs' complaint (Document No. 1); Defendants' Motion to Dismiss

or Alternatively Motion for Summary Judgment (Document No. 7); and Plaintiff Steven Dale

Shanklin's response thereto (Document No. 8). Plaintiffs, proceeding pro se, have paid the full filing

fee for their complaint.

**I.  BACKGROUND**

Plaintiff Steven Dale Shanklin ("Shanklin") entered a plea of guilty pursuant to a plea

agreement on May 20, 2005, in Cause No. A-05-CR-064-SS. Shanklin was sentenced on

September 30, 2005, to sixty months custody in the Bureau of Prisons, followed by a three-year term

of supervised release, for attempting to evade or defeat tax in violation of 26 U.S.C. § 7201.

According to Shanklin, he was initially incarcerated on November 18, 2005, at the FCI Bastrop Satellite Prison Camp. Shanklin asserts he was unlawfully transferred to FCI La Tuna on November 20, 2007,[1] in retaliation for helping inmates at Bastrop with their legal work and administrative remedies. The transfer allegedly caused an increase in Shanklin's security level.

Shanklin complains he was forced to work hard labor as part of his sentence from November 18, 2005, through September 29, 2009, while he was confined at FCI Bastrop and FCI La Tuna. Additionally, Shanklin complains he was only provided 30 square feet of housing per inmate at FCI Bastrop and only 24 square feet of housing per inmate at FCI La Tuna. Shanklin claims he was kept in overcrowded and inhumane prison conditions during his totality of confinement at FCI Bastrop and FCI La Tuna. In addition, Shanklin alleges the transfer caused him a loss of consortium for five months.

Shanklin also complains of an incident occurring on August 12, 2009. Shanklin alleges his living area was searched on this day and some of his property was taken. According to Shanklin, the property included some of his legal materials, such as legal paperwork filed in another inmate's case, large paper clips and green folders. He claims this interfered with his ability to effectively argue his intended appeal. Shanklin states he had been using the clips and green folders for years without complaint from prison officials. Shanklin alleges it was not until August 12, 2009, after he helped inmates with their administrative remedies against Defendants Ma'at and Chamblin did they object to his use of the clips and folders.

---

[1]In his original complaint Shanklin mistakenly states the date of the transfer was November 20, 2008. Shanklin admits in his response to Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment the correct date is November 20, 2007.

2

Shanklin indicates he was issued Incident Report #1904419 on August 12, 2009, at 6:05 p.m. The following day, Shanklin attended his disciplinary hearing at 2:27 p.m., less than twenty-four hours after he was issued the report.  According to Shanklin, the Unit Disciplinary Committee ("UDC") consisted of Associate Warden R. Kosco and Camp Case Manager Ms. A. Armijo. Shanklin asserts he objected he did not have twenty-four hours notice prior to the hearing.  Shanklin states he admitted to having possession of the legal materials of another inmate, the clips and the folders.  However, he allegedly explained why such property was legally in his possession.  Shanklin maintains he asked to call Ms. Tatum as a witness at his hearing, but his request was denied. Shanklin also asserts he told the UDC he was being harassed and retaliated against for helping three inmates prepare their administrative remedies.  Shanklin alleges Kosco found him guilty of a Code 305 violation and imposed the loss of thirty days of telephone privileges as punishment.  As a result of the punishment, Shanklin claims he and his family suffered a loss of consortium.

Shanklin alleges he appealed the disciplinary decision to Warden Maye.  Warden Maye allegedly responded on September 10, 2009, that the incident report was processed appropriately.

During the week beginning September 21, 2009, Shanklin claims Defendant Chamblin worked the graveyard shift from 12:00 a.m. to 8:00 a.m.  Shanklin claims at least three times that week Chamblin awoke Shanklin by striking her service flashlight against Shanklin's bed frame while she was doing the midnight bed count.  Shanklin maintains Chamblin disturbed Shanklin's sleep in retaliation for his exercising his constitutional and statutory rights and subjected Shanklin to duress, coercion, and undue influence over Shanklin's personal decision-making automony.

Shanklin, his mother Doris Gay Luber and Shanklin's children request monetary damages against Defendants Ellen Chamblin, Anna Armijo, S. Ma'at, Shawn Mikeska, Robert Kosco and

3

Claude Maye.  Specifically, Shanklin claims he was denied his rights to free speech and to petition the government when Defendants Chamblin, Armijo, Ma'at, Kosco and Maye retaliated against him for helping other inmates prepare legal documents and administrative remedies.  Shanklin further claims Defendant Chamblin deprived Shanklin of his right to privacy in his legal matters.  With regard to Shanklin's disciplinary hearing Shanklin claims Defendants Armijo, Kosco and Maye deprived him of his rights to: (1) fair notice of a criminal offense, (2) twenty-four hours notice before his disciplinary hearing, (3) call witnesses, (4) present evidence, and (5) trial by impartial jury. Similarly, he claims Defendants Armijo, Kosco and Maye imposed cruel and unusual punishment and violated his right to only be disciplined for violating Bureau of Prison rules.  Shanklin further claims Defendants Armijo, Ma'at, Mikeska, Kosco and Maye imposed cruel and unusual punishment by providing Shanklin with inadequate housing.  Shanklin additionally claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye intentionally inflicted emotional distress upon him.  Next, Shanklin claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye violated 28 U.S.C. § 1589 by forcing Shanklin to involuntary servitude at hard labor.  Shanklin also claims Defendant Chamblin committed theft and conversion of his legal materials.  Shanklin next claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye were negligent with regard to his disciplinary proceeding, his transfer to La Tuna, and the causing of loss of consortium between Shanklin and his mother and children.  Finally, Shanklin claims he was transferred to a penitentiary for the service of his sentence in violation of his Fifth Amendment right to not be incarcerated at a penitentiary without the return of an indictment by a grand jury.  Although Shanklin alleges his constitutional claims are filed pursuant to 42 U.S.C. § 1983, his claims are actually brought under Bivens v. Six Unknown

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), because Shanklin is suing federal actors.

Defendants move to dismiss Plaintiffs' complaint or for summary judgment. Defendants argue Shanklin's complaint should be dismissed for his failure to exhaust his administrative remedies prior to filing his lawsuit. Defendants further argue Shanklin's retaliation claim is without merit because inmates do not have a constitutionally protected interest in assignment to a particular facility or custodial classification. In addition, they argue Shanklin's retaliation claim with regard to his transfer to FCI La Tuna is time-barred. With respect to Shanklin's complaint about the size of the prison dorm rooms, Defendants argue Plaintiffs lack standing because none of them are currently confined in federal prison. They additionally argue Shanklin's allegations regarding the size of the prison dorm rooms fail to state a constitutional violation. To the extent Shanklin challenges his prison disciplinary proceeding Defendants argue Shanklin does not raise a constitutional claim, because Shanklin only lost 30-days of phone privileges. Defendants also assert their entitlement to qualified immunity and argue they are immune from Plaintiffs' assertion of common law torts against them.

Shanklin responds he is not required to exhaust his administrative remedies because he was not a prisoner at the time he filed his lawsuit. Shanklin admits his claim against Defendant Mikeska regarding his negligent transfer to FCI La Tuna is time-barred. Shanklin clarifies he did not allege he had a constitutionally protected interest in assignment to a particular facility but instead alleged his transfer was for a constitutionally impermissible reason. Shanklin denies his claim regarding forced labor is time-barred and argues that cause of action has a ten-year limitations period. Shanklin refutes Defendants argument that he has no standing to challenge prison overcrowding

simply because he is no longer incarcerated.  Shanklin denies Defendants are entitled to qualified immunity.  Shanklin also denies Defendants are entitled to immunity in their individual capacities for torts, because Defendants were not acting in the course and scope of their federal employment. Specifically, Shanklin argues none of the defendants' retaliatory behavior falls within the scope of their employment nor does their disciplinary procedures carried out in violation of the rules of the Bureau of Prisons.

## II. ANALYSIS

A.     <u>Standard Under Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1965-66 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, 550 U.S. at  570, 127 S. Ct. at 1974.  The Supreme Court has recently made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937,

1949 (2009).  The standard is properly guided by "[t]wo working principles."  Id.  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949-50.  Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Even after Twombly, though, courts remain obligated to construe a pro se complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (reiterating long-standing rule that documents filed pro se are to be construed liberally).

   B.    Summary Judgment Standard

   A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996);  Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon

mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.

Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995);  FED. R. CIV. P. 56.[2]

Both movants and non-movants bear burdens of proof in the summary judgment process.

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986).  The movant with the burden of

proof at trial must establish every essential element of its claim or affirmative defense.  Id. at 322,

106 S. Ct. at 2552.  In so doing, the moving party without the burden of proof need only point to the

absence of evidence on an essential element of the non-movant's claims or affirmative defenses.  Id.

at 323-24, 106 S. Ct. at 2554.  At that point, the burden shifts to the non-moving party to "produce

evidence in support of its claims or affirmative defenses . . . designating specific facts showing that

there is a genuine issue for trial."  Id. at 324, 106 S. Ct. at 2553.  The non-moving party must

produce "specific facts" showing a genuine issue for trial, not mere general allegations.  Tubacex

v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the

light most favorable to the party opposing summary judgment and indulge all reasonable inferences

in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely

whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational

trier of fact could find for the non-moving party based upon the evidence before the court."  James

v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)).

---

[2]Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change
and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV.
P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there
is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law.").

To the extent facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v.

Barton, 34 F.3d 298, 301 (5th Cir. 1994).

      C.     Exhaustion of Administrative Remedies

     Defendants move to dismiss Plaintiffs' complaint for Shanklin's failure to exhaust his

administrative remedies prior to filing his complaint.  Shanklin argues he was not required to exhaust

his administrative remedies prior to filing his complaint, because he was not a prisoner at the time

he filed his lawsuit.

     The Prison Litigation Reform Act (" PLRA")  provides "[n]o action shall be brought with

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

§ 1997e(a); Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003); Underwood v. Wilson, 151 F.3d

292, 293 (5th Cir. 1998).   As defined by the PLRA, "the term 'prisoner' means any person

incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated

delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial

release, or diversionary program." 42 U.S.C. § 1997e(h).  Therefore, the administrative exhaustion

requirements of the PLRA apply only to § 1983 and Bivens suits brought by those who are

imprisoned, incarcerated, or detained at the time their action is filed.  See Janes v. Hernandez, 215

F.3d 541, 543 (5th Cir. 2000), cert. denied, 531 U.S. 1113, 121 S. Ct. 858 (2001); accord Norton v.

City of Marietta, 432 F.3d 1145, 1150-51 (10th Cir. 2005); Talamantes v. Leyva, 575 F.3d 1021,

1024 (9th Cir. 2009); Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005); Witzke v. Femal, 376

F.3d 744, 750 (7th Cir. 2004); Cox v. Mayer, 332 F.3d 422, 424-25 (6th Cir. 2003); Cofield v.

Bowser, 247 Fed. Appx. 413, 414 (4th Cir. 2007); Ahmed v. Dragovich, 297 F.3d 201, 210 n. 10 (3d

Cir. 2002); Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002). Because Shanklin was no longer a prisoner at the time he filed his complaint, he was not required to exhaust his administrative remedies before bringing suit.

      D.    <u>Statute of Limitations</u>

      Defendants move to dismiss as time-barred Shanklin's claim regarding his alleged retaliatory transfer to FCI La Tuna. According to Defendants, Shanklin was transferred from FCI Bastrop to FCI La Tuna on November 29, 2007. Shanklin states the date of the transfer was November 20, 2007. Shanklin was returned to FCI Bastrop on April 30, 2008.

      Because there is no federal statute of limitations for <u>Bivens</u> claims, federal courts apply the general personal injury limitations period and tolling provisions of the forum state. <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 590 (5th Cir. 1999); <u>Gartrell v. Gaylor</u>, 981 F.2d 254, 256 (5th Cir. 1993); <u>see</u> <u>also</u>, <u>Izen v. Catalina</u>, 398 F.3d 363, 367 n. 3 (5th Cir. 2005). In Texas, the relevant statute of limitations is two years. <u>See</u> <u>Cooper v. Brookshire</u>, 70 F.3d 377, 380 n. 20 (5th Cir. 1995); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 1986).

      Shanklin admits his negligence claim against Defendant Mikeska in Count 12, paragraph 227 of his complaint, is time-barred. However, all of Shanklin's claims regarding his transfer to or confinement in FCI La Tuna are time-barred. As mentioned above, Shanklin was returned to FCI Bastrop on April 30, 2008. Shanklin did not file his civil rights complaint until August 12, 2011, more than three years after he was returned to FCI Bastop. As such, his claims regarding his transfer to or his confinement in FCI La Tuna are time-barred.

E.     Qualified Immunity

Defendants assert their entitlement to qualified immunity.  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  Immunity in this sense means immunity from suit, not merely from liability.  Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law."  Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.  Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations."  Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  Recently, however, the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009).  As explained

11

below, Shanklin has not stated a valid constitutional violation.  As such Defendants are entitled to qualified immunity with respect to Shanklin's federal constitutional claims.

       1.    <u>Retaliation</u>

Most of Shanklin's claims relate to his allegations that his August 12, 2009, incident report and subsequent disciplinary hearing were in retaliation for his helping other inmates with their legal matters and administrative remedies.  Shanklin asserts no viable retaliation claim.

To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that, but for the retaliatory motive, the complained of incident would not have occurred.  This places a significant burden on the inmate, and mere conclusory allegations of retaliation will not suffice.  <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir.1995).

Shanklin alleges Defendants retaliated against him because he helped other inmates file administrative grievances against some of the defendants and assisted inmates with their legal matters. To prevail under this claim, Shanklin must show that he was retaliated against for exercising a constitutional right.  Shanklin, however, enjoys no constitutional right to help another inmate file a prison grievance or legal claim.  <u>See</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 231 n. 3, 121 S. Ct. 1475 (2001) (noting that prisoners do not have a freestanding right to give or receive legal advice); <u>see also</u> <u>Tighe v. Wall</u>, 100 F.3d 41, 43 (5th Cir. 1996) (refusing to find that "jailhouse lawyers" have a protected liberty interest in providing assistance to other inmates).  Accordingly, Shanklin fails to assert his exercise of a constitutional right that resulted in retaliation against him by the defendants.

       2.    <u>Privacy</u>

Shanklin alleges Defendant Chamblin deprived him of his Fourth Amendment right to privacy in his legal matters when she looked through his legal materials.  However, an inmate has

no privacy interest in his cell or in the personal property contained therein.  Valencia v. Wiggins, 981

F.2d 1440, 1444 (5th Cir. 1993); Bell v. Wolfish, 441 U.S. 520, 537, 99 S. Ct. 1861 (1979). Nor has

Shanklin shown a constitutional violation in the taking of his property because he has not shown that

the confiscation of the property worked an actual impediment to his right of access to court.  Lewis

v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish

a violation of the right of access to court). Accordingly, Shanklin has not stated a valid constitutional

violation.

> 3.    Disciplinary Proceedings

As a result of the August 13, 2009 disciplinary proceedings, Shanklin lost thirty days of

telephone privileges.  Shanklin makes various challenges to his disciplinary proceedings.

Specifically, Shanklin complains he was not given fair notice of a criminal offense, not given twenty-

four hours notice before his disciplinary hearing, not allowed to call witnesses, not allowed to

present evidence and not allowed a trial by an impartial jury.

An inmate is not entitled to due process protections in prison disciplinary hearings unless he

is subjected to sanctions which "impose[ ] atypical and significant hardships on the inmate in relation

to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Shanklin's

loss of telephone privileges for thirty days does not implicate due process concerns.  Protected

interests "are generally limited to state-created regulations or statutes which affect the quantity of

time rather than the quality of time served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th

Cir. 1997).  Being placed in disciplinary confinement, losing commissary and property privileges,

and remaining at the same time-earning class are not sanctions which impose an "atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515

U.S. at 474 (holding that no liberty interest was implicated by placement in administrative segregation); Madison, 104 F.3d at 768 (concluding that imposing thirty days of commissary and cell restrictions as punishment constitutes mere changes in the conditions of a prisoner's confinement and do not implicate due process concerns).  Shanklin's claim that he was improperly disciplined with the loss of thirty days of telephone privileges does not implicate a liberty interest. In addition, to the extent Shanklin is contending the defendants failed to comply with Bureau of Prison regulations, it is well-established in the Fifth Circuit that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (citations omitted).  Finally, Shanklin was not charged with a criminal offense and was not entitled to a jury trial.

Shanklin's Eighth Amendment claims fare no better.  The indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities.  Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417 (1989).  The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.  Rhodes v. Chapman, 452 U.S. 337, 346-7, 101 S. Ct. 2392 (1981).  Shanklin's disciplinary proceedings wherein he lost telephone privileges for thirty days do not amount to cruel and unusual punishment under the Eighth Amendment.  Such a penalty cannot even be considered harsh.  As such, Shanklin has failed to state a valid constitutional claim with respect to his disciplinary proceedings.

14

4.    <u>Inadequate Housing</u>

Shanklin also challenges his lack of living space. As mentioned above, the Eighth Amendment prohibits cruel and unusual punishments. This has been interpreted by the Supreme Court to mean physically barbarous punishments. Such punishments are those which involve "the wanton and unnecessary infliction of pain," or those which are grossly disproportionate to the crime. <u>Rhodes</u>, 452 U.S. at 346. The Constitution does not mandate comfortable prisons. <u>Id.</u> at 349. If conditions for prisoners are "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> at 347. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S. Ct. 995 (1992). Shanklin pleads little beyond the dimensions of his living areas as evidence of his inhumane conditions of confinement. However, a lack of living space in and of itself does not violate the Eighth Amendment. Accordingly, Shanklin has failed to state a valid constitutional claim.

5.    <u>Forced Labor</u>

Once again Shanklin raises a claim that 28 U.S.C. § 1589 was violated by forcing him to involuntary servitude at hard labor. The Court has already rejected Shanklin's claims in Cause No. A-09-CV-909-LY. As explained previously, Shanklin cites no authority to support his claim that his prison work assignments constitute illegal forced labor.[3]

---

[3]Moreover, the Thirteenth Amendment permits involuntary servitude without pay as punishment after conviction of an offense, even when the prisoner is not explicitly sentenced to hard labor. <u>Ali v. Johnson</u>, 259 F.3d 317, 318 (5th Cir. 2001); <u>Murray v. Miss. Dep't of Corr.</u>, 911 F.2d 1167, 1167-68 (5th Cir. 1990); <u>Wendt v. Lynaugh</u>, 841 F.2d 619, 620-21 (5th Cir. 1988).

6.      Prison Confinement

Shanklin similarly argues he should not have been confined in prison and required to perform "hard labor" without the return of an indictment by a grand jury.  As previously explained to Shanklin, "[w]hile the copy of the indictment in the record is not signed by the grand jury foreperson, the record shows that the grand jury foreperson's signature was redacted pursuant to the E-Government Act of 2002."  United States v. Shanklin, No. 06-50773 (5th Cir. Feb. 7, 2008). Shanklin's conviction has not been overturned.

E.      State Law Claims

Shanklin also raises several state law claims.  Defendants assert they are immune from Shanklin's claims alleging intentional infliction of emotional distress, negligence, theft, and conversion.  They explain the Westfall Act protects the defendants who were acting in the course and scope of their federal employment at the time that the allegations arose.

The Westfall Act provides absolute immunity to any federal employee who commits a negligent or wrongful act or omission, resulting in injury or loss of property, while acting within the scope of her office or employment. See 28 U.S.C. § 2679(b)(1); Palmer v. Flaggman, 93 F.3d 196, 200 (5th Cir. 1996) (holding that the FTCA is the exclusive remedy for a plaintiff injured by an employee of the United States acting within the scope of her employment).

The Attorney General may certify that the defendant employee was acting within the scope of her employment at the time of the incident giving rise to the plaintiff's claims. 28 U.S.C. § 2679(d) (1).  If the Attorney General so certifies, the action is construed as one brought against the United States and the United States shall be substituted as the party defendant. Id.  The Attorney General's certification is subject to judicial review.  Gutierrez de Martinez v. Lamagno, 515 U.S.

16

417, 420, 115 S. Ct. 2227 (1995); Garcia v. United States, 62 F.3d 126, 127 (5th Cir. 1995) (en banc). In the Fifth Circuit, the plaintiff bears the burden of proof to show that the defendant's conduct was not within the scope of his or her scope of employment. Williams v. United States, 71 F.3d 502, 506 (5th Cir. 1995).

Texas law controls the question of whether a defendant employee was acting within the scope of her employment. Palmer, 93 F.3d at 199 (noting that the law of the state in which the alleged misconduct occurred applies to the scope of employment question); Williams, 71 F.3d at 505. Under Texas law, determination of scope of employment is applied under the theory of respondeat superior, where employers may be held liable for negligent acts by their employees only if the employee's actions are in the course and scope of their employment. Mata v. Andrews Transport, Inc., 900 S.W.2d 363, 366 (Tex. App.-Houston 1995). An employee acts within the course and scope of his employment when the tortious act: (1) falls within his general authority given to him by his employer, (2) is in furtherance of the employer's business, and (3) is for the accomplishment of the object for which the employee was hired. Minyard Food Stores v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Robertson Tank Lines, Inc. v. Van Cleave, 468 S.W.2d 354 (Tex. 1971). In addition, to be within the scope of employment, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." Smith v. M System Food Stores, Inc., 156 Tex. 484, 297 S.W.2d 112, 114 (Tex. 1957). However, when an employee turns away from the advancement of the employer's work to engage in wholly personal pursuits, the employee is no longer acting on behalf of the employer in the scope of employment. Mackey v. U .P. Enters., Inc., 935 S.W.2d 446, 453 (Tex. App.-Tyler 1996, no writ).

17

Shanklin argues Defendants were not acting within the scope of their employment. However, the Attorney General has not certified the defendants were acting within the scope of their employment at the time of the incident giving rise to Shanklin's claims. Because the Attorney General has failed to make this certification, dismissal pursuant to the Westfall Act is premature.[4]

## III. RECOMMENDATION

The undersigned recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment. Specifically, the District Court should **GRANT** Defendants' Motion for Summary Judgment with respect to Shanklin's federal constitutional claims and **DENY** Defendants' Motion for Summary Judgment with respect to Shanklin's state law claims. The undersigned further recommends that the District Court **DISMISS** Defendants' Motion to Dismiss.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of

---

[4] If the Court subsequently determines the defendants were acting within the scope of their employment, the United States should be substituted as the defendant for the state law claims.

unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28

U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);

Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and

Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 22nd day of June, 2012.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE