IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STEVEN DALE SHANKLIN, DORIS GAY § <br> LUBER, and on behalf of D.M.S., and on § <br> behalf of S.D.S § <br> § <br> V. § <br> § <br> ELLEN CHAMBLIN, ANNA ARMIJO, § <br> S. MA'AT, SHAWN MIKESKA, § <br> ROBERT KOSCO, CLAUDE MAYE, § <br> and UNITED STATES OF AMERICA § | A-11-CV-699-LY |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Interim Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiffs' complaint (Document No. 1) and United States's Motion to Dismiss or for Summary Judgment (Document No. 16). Plaintiffs did not file a response thereto. Plaintiffs, proceeding pro se, have paid the full filing fee for their complaint.

I. BACKGROUND

Plaintiff Steven Dale Shanklin ("Shanklin") entered a plea of guilty pursuant to a plea agreement on May 20, 2005, in Cause No. A-05-CR-064-SS. Shanklin was sentenced on September 30, 2005, to sixty months custody in the Bureau of Prisons, followed by a three-year term of supervised release, for attempting to evade or defeat tax in violation of 26 U.S.C. § 7201.

According to Shanklin, he was initially incarcerated on November 18, 2005, at the FCI Bastrop Satellite Prison Camp. Shanklin asserts he was unlawfully transferred to FCI La Tuna on November 20, 2007,[1] in retaliation for helping inmates at Bastrop with their legal work and administrative remedies. The transfer allegedly caused an increase in Shanklin's security level.

Shanklin complains he was forced to work hard labor as part of his sentence from November 18, 2005, through September 29, 2009, while he was confined at FCI Bastrop and FCI La Tuna. Additionally, Shanklin complains he was only provided 30 square feet of housing per inmate at FCI Bastrop and only 24 square feet of housing per inmate at FCI La Tuna. Shanklin claims he was kept in overcrowded and inhumane prison conditions during his totality of confinement at FCI Bastrop and FCI La Tuna. In addition, Shanklin alleges the transfer caused him a loss of consortium for five months.

Shanklin also complains of an incident occurring on August 12, 2009. Shanklin alleges his living area was searched on this day and some of his property was taken. According to Shanklin, the property included some of his legal materials, such as legal paperwork filed in another inmate's case, large paper clips and green folders. He claims this interfered with his ability to effectively argue his intended appeal. Shanklin states he had been using the clips and green folders for years without complaint from prison officials. Shanklin alleges it was not until August 12, 2009, after he helped inmates with their administrative remedies against Defendants Ma'at and Chamblin did they object to his use of the clips and folders.

---

[1] In his original complaint Shanklin mistakenly states the date of the transfer was November 20, 2008. Shanklin admits in his response [#8] to Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment the correct date is November 20, 2007.

Shanklin indicates he was issued Incident Report #1904419 on August 12, 2009, at 6:05 p.m. The following day, Shanklin attended his disciplinary hearing at 2:27 p.m., less than twenty-four hours after he was issued the report. According to Shanklin, the Unit Disciplinary Committee ("UDC") consisted of Associate Warden R. Kosco and Camp Case Manager Ms. A. Armijo. Shanklin asserts he objected he did not have twenty-four hours notice prior to the hearing. Shanklin states he admitted to having possession of the legal materials of another inmate, the clips and the folders. However, he allegedly explained why such property was legally in his possession. Shanklin maintains he asked to call Ms. Tatum as a witness at his hearing, but his request was denied. Shanklin also asserts he told the UDC he was being harassed and retaliated against for helping three inmates prepare their administrative remedies. Shanklin alleges Kosco found him guilty of a Code 305 violation and imposed the loss of thirty days of telephone privileges as punishment. As a result of the punishment, Shanklin claims he and his family suffered a loss of consortium. Shanklin alleges he appealed the disciplinary decision to Warden Maye. Warden Maye allegedly responded on September 10, 2009, that the incident report was processed appropriately.

During the week beginning September 21, 2009, Shanklin claims Defendant Chamblin worked the graveyard shift from 12:00 a.m. to 8:00 a.m. Shanklin claims at least three times that week Chamblin awoke Shanklin by striking her service flashlight against Shanklin's bed frame while she was doing the midnight bed count. Shanklin maintains Chamblin disturbed Shanklin's sleep in retaliation for his exercising his constitutional and statutory rights and subjected Shanklin to duress, coercion, and undue influence over Shanklin's personal decision-making automony.

Shanklin, his mother Doris Gay Luber and Shanklin's children request monetary damages against Defendants Ellen Chamblin, Anna Armijo, S. Ma'at, Shawn Mikeska, Robert Kosco and

Claude Maye. Specifically, Shanklin claims he was denied his rights to free speech and to petition the government when Defendants Chamblin, Armijo, Ma'at, Kosco and Maye retaliated against him for helping other inmates prepare legal documents and administrative remedies. Shanklin further claims Defendant Chamblin deprived Shanklin of his right to privacy in his legal matters. With regard to Shanklin's disciplinary hearing Shanklin claims Defendants Armijo, Kosco and Maye deprived him of his rights to: (1) fair notice of a criminal offense, (2) twenty-four hours notice before his disciplinary hearing, (3) call witnesses, (4) present evidence, and (5) trial by impartial jury. Similarly, he claims Defendants Armijo, Kosco and Maye imposed cruel and unusual punishment and violated his right to only be disciplined for violating Bureau of Prison rules. Shanklin further claims Defendants Armijo, Ma'at, Mikeska, Kosco and Maye imposed cruel and unusual punishment by providing Shanklin with inadequate housing. Shanklin additionally claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye intentionally inflicted emotional distress upon him. Next, Shanklin claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye violated 28 U.S.C. § 1589 by forcing Shanklin to involuntary servitude at hard labor. Shanklin also claims Defendant Chamblin committed theft and conversion of his legal materials. Shanklin next claims Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye were negligent with regard to his disciplinary proceeding, his transfer to La Tuna, and the causing of loss of consortium between Shanklin and his mother and children. Finally, Shanklin claims he was transferred to a penitentiary for the service of his sentence in violation of his Fifth Amendment right to not be incarcerated at a penitentiary without the return of an indictment by a grand jury. As previously noted, Shanklin's constitutional claims are brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), because Shanklin is suing federal actors.

Defendants previously moved to dismiss Plaintiffs' complaint or for summary judgment. Defendants argued Shanklin's complaint should be dismissed for his failure to exhaust his administrative remedies prior to filing his lawsuit. Defendants further argued Shanklin's retaliation claim was without merit because inmates do not have a constitutionally protected interest in assignment to a particular facility or custodial classification. In addition, they argued Shanklin's retaliation claim with regard to his transfer to FCI La Tuna was time-barred. With respect to Shanklin's complaint about the size of the prison dorm rooms, Defendants argued Plaintiffs lack standing because none of them were currently confined in federal prison. They additionally argued Shanklin's allegations regarding the size of the prison dorm rooms failed to state a constitutional violation. To the extent Shanklin challenged his prison disciplinary proceeding Defendants argued Shanklin did not raise a constitutional claim, because Shanklin only lost 30-days of phone privileges. Defendants also asserted their entitlement to qualified immunity and argued they are immune from Plaintiffs' assertion of common law torts against them.

On August 6, 2012, the Court granted Defendants' motion to the extent Plaintiff's federal constitutional claims were dismissed with prejudice. The Court denied Defendants' motion to dismiss Plaintiffs' state-law claims based on the Westfall Act, because dismissal was premature. Accordingly, the only claims remaining in this case are Plaintiffs' state-law claims.

Pursuant to 28 U.S.C. § 2679(d)(1), (2), a designee for the Attorney General recently certified the federal employees in this case were acting within the scope of their office or employment at the time of the incident out of which the state-law claims arose. The United States filed a Notice of Substitution shortly thereafter. The Government now moves to dismiss Plaintiffs' state-law claims or for summary judgment. The Government argues Plaintiffs' claims do not fall within the Federal

Tort Claims Act's limited waiver of sovereign immunity. Specifically, the Government urges Plaintiffs have not exhausted their administrative remedies and base their claims on federal regulations rather than state common law. Plaintiffs did not respond to the motion

## II. ANALYSIS

The Westfall Act protects the defendants who were acting in the course and scope of their federal employment at the time that the allegations arose. The Westfall Act provides absolute immunity to any federal employee who commits a negligent or wrongful act or omission, resulting in injury or loss of property, while acting within the scope of her office or employment. See 28 U.S.C. § 2679(b)(1); Palmer v. Flaggman, 93 F.3d 196, 200 (5th Cir. 1996) (holding that the Federal Tort Claims Act ("FTCA") is the exclusive remedy for a plaintiff injured by an employee of the United States acting within the scope of her employment). The Court previously explained the Attorney General may certify that the defendant employee was acting within the scope of her employment at the time of the incident giving rise to the plaintiff's claims. 28 U.S.C. § 2679(d)(1). If the Attorney General so certifies, the action is construed as one brought against the United States and the United States shall be substituted as the party defendant. Id.

Having reviewed the Government's Notice of Substitution and attached Certification, the Court agrees the United States of America is the proper defendant with regard to Plaintiffs' state-law claims. Accordingly, Plaintiffs' state-law claims brought against Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye should be dismissed and the United States should be substituted as the defendant with regard to these claims.

The FTCA, however, provides a limited waiver of sovereign immunity. The statute allows the United States to be held liable to the same extent as a private employer for certain common law

torts of government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). A claim is not actionable in federal court unless the claimant has exhausted administrative remedies with the appropriate government agency. 28 U.S.C. § 2675(a). The FTCA bars claimants from filing suit in federal court until they have exhausted administrative remedies. <u>McNeil v. United States</u>, 508 U.S. 106, 113, 113 S. Ct. 1980 (1993).

As explained by the Government, Plaintiffs have not presented an administrative claim for any of the conduct they allege in this lawsuit. <u>See</u> Sweany Decl. at 3-4 (Doc. 7-2). Because Plaintiffs failed to exhaust their administrative remedies prior to filing their lawsuit, the Court is without jurisdiction to consider Plaintiffs' claims under the FTCA. Accordingly, Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for want of jurisdiction.

### III. RECOMMENDATION

The undersigned recommends that the District Court substitute the United States as the defendant with regard to Plaintiffs' state-law claims brought against Defendants Chamblin, Armijo, Ma'at, Mikeska, Kosco and Maye. The undersigned further recommends that the District Court **GRANT** the Government's Motion to Dismiss or for Summary Judgment and dismiss Plaintiffs' state-law claims without prejudice for failure to exhaust their administrative remedies. A final judgment should be rendered as the state-law claims were the only claims remaining in this case.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. <u>Battles v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 11th day of December, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE